IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:18-cr-00446-AA |
| v. | **ORDER AND OPINION** |
| MARVIN DWAYNE BARBER, | |
| Defendant, | |

AIKEN, District Judge:

Now before the Court is defendant Marvin Barber's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (doc. 45)  Specifically, defendant requests that his sentence be reduced immediately to one of time served and that his conditions of supervised release be amended to include a term of home confinement. This motion is based on the First Step Act of 2018 ("FSA").  Pub. L. No. 115-391, 132 Stat. 5194 (2018).  The FSA allows prisoners to petition courts for sentence modifications, after exhausting administrative procedures, based on extraordinary

and compelling reasons—a process also known as compassionate release. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

Defendant previously pleaded guilty pursuant to a plea agreement to one count of Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(l), (b)(l)(B) and one Count of Felon in Possession of a Firearm 18 U.S.C. § 922(g)(l). On January 22, 2019, this Court sentenced defendant to concurrent sentences of 60 months, the statutory minimum, in Bureau of Prisons ("BOP") custody on both Count 1 and Count 2 of the information. The Court also imposed a four-year term of supervised release.

Defendant was initially arrested on these charges on March 15, 2018, and he was released with conditions the same day. Following sentencing, the Court granted defendant 90 days in which to self-surrender to BOP custody to allow him to address family matters arising from the death of his mother. On April 12, 2019, the Court granted defendant's request to extend his surrender date form April 22, 2019 to June 24, 2019. On June 14, 2019, the Court extended his surrender date a second time to August 26, 2019, on which date he began serving his sentence. Consequently, defendant has served approximately 8 and a half months of his 60-month in custody sentence. Defendant is currently held in low security at FCI Lompac in Califorinia, and BOP records indicate that his current projected release date is January 8, 2024. Def. Mot. for Release at 3.

On April 2, 2020, the Federal Public Defender for the District of Oregon applied for compassionate release under 18 U.S.C. 3582(c)(1)(a) to the Warden at FCI Lompoc on defendant's behalf. Since that time, there has been no formal response from the Warden to that request. This Court heard oral argument on this matter on May 7, 2020.

## LEGAL STANDARD

A federal district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see, *Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release provides an exception in rare cases.

Section 3582(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; [...]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Policy Statement issued by the United States Sentencing Commission, § 1.B.1.13 of the U.S. Sentencing Guidelines, was last amended in November 2018 before the FSA was enacted into law. Application Note 1 to § 1B1.13 identifies extraordinary and compelling reasons in four categories: 1.) the medical condition of

the defendant, 2.) age of the defendant, 3.) family circumstances, and 4.) other reasons, as determined by the Director of the BOP, in a defendant's case amounting to an extraordinary and compelling reason, "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n. 1(A)–(D).

The Policy Statement also requires a finding that "the defendant is not a danger to the safety of any other person or to the community provided in 18 U.S.C. § 3142(g)."[1] § 1B1.13(2)

Finally, the Policy Statement notes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." *Id*. n.4.

A defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

For the Court to exercise its authority under 18 U.S.C. § 3582(c)(1)(A) to reduce defendant's sentence it must 1.) find the appropriate administrative remedies were

---

[1] Section 3142(g) identifies the following factors a court must consider in determining whether conditions of release will reasonable assure the safety of any other person and the community: 1.) the nature and circumstances of the offense charged, 2.) the weight of the evidence against the person, 3.) the history and characteristics of the person, and 4.) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Page 4 – ORDER AND OPINION

exhausted and the statutorily prescribed time period has passed, 2.) find that extraordinary and compelling reasons exist for a sentence reduction, 3.) consider the sentencing factors under 18 U.S.C. § 3553(a), and 4.) ensure any reduction is consistent with applicable policy statements from the sentencing commission.

Initially, the Court notes that defendant filed an application for compassionate release on April 2, 2020.[2] More than thirty days have passed since defendant submitted his request to the warden at the facility where he is confined. *See Brown v. United States*, 411 F.Supp.3d 446, 452 (S.D. Iowa 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it.") (internal citations omitted). Thus, the present motion is properly before this Court.[3]

Next, the Court considers whether extraordinary and compelling reasons warrant a sentence reduction in this case. The Court finds that the scenario provided in U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii), in combination with cmt. n. 1(D), applies in this case. Under § 1B1.13 cmt. n. 1(A)(ii), extraordinary and compelling reasons exist, *inter alia*, when "the defendant is suffering from a serious physical or medical

---

[2] As the government notes, it appears that the initial request for release was made on his behalf by counsel. He was included in a request with other inmates who were noted to be over the age of 65. Defendant is not over the age of 65, rather he is 59-years old. The government ultimately concedes that this letter from the Federal Public Defender qualifies as a valid request for compassionate release under the FSA.

[3] Though the issue is not before the Court, the Court would likely find that the 30-day period provided under § 3582(c)(1)(A) would not necessarily bar the Court from considering the motion. *See United States v. Ben-Yhwh*, ___ F.Supp.3d ___, 2020 WL 1874125, at *2-3, (D. Haw. April 13, 2020) (Judge Kobayashi discussing bases for waiver of the exhaustion requirement for compassionate release and finding that they applied in that case.)

Page 5 – ORDER AND OPINION

condition, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Alternatively, § 1B1.13, as currently written, would not constrain this Court's ability to find extraordinary and compelling reasons here. As the Sentencing Commission's policy statement was not amended after enactment of the FSA "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" … "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020); (citing *Brown*, 411 F. Supp. 3d at 447, 499 (canvassing district court decisions)); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'")

The Court is persuaded by the reasoning of numerous other district courts and holds that it is "not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn, Mar. 4, 2020); *see also United States v. Perez*, , 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it.")

The Court acknowledges, as it has before the global crisis caused by the 2019 novel Coronavirus ("COVID-19"). The pandemic has killed thousands, sickened millions, and disrupted stability and security in the lives of billions. As of the hearing on this motion, there have been more than 3.7 million reported cases worldwide. Coronavirus COVID-19 Global Cases, CENTER FOR SYSTEMS SCIENCE AND ENGINEERING AT JOHNS HOPKINS UNIVERSITY, https://coronavirus.jhu.edu/map.html (last visited May 6, 2020, at 12:52 P.M.). More than 1.2 million of those cases have occurred in the United States. *Id.* Over 260,000 deaths around the world have attributed to the virus, over 70,000 of which have been reported in this country. *Id.* Further spread of infection and death are likely. Across the world, government and private institutions alike were unprepared for this outbreak or its ramifications. In the United States, "the President has declared a National Emergency due to the spread of the novel coronavirus and states and localities across the nation have implemented measures to stymie its rapid spread." *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020)

Prisoners are particularly vulnerable to infection due to the nature of their incarceration. Center for Disease Control, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Specifically, prisoners are unable to adequately follow social distancing and sanitary guidelines recommended to avoid the spread of infection.

In his motion, defendant argues that his health condition is fragile, making him acutely at risk given the current spread of COVID-19. It is undisputed that the defendant suffers from hypertension, obesity, and diabetes.[4] It is well documented that hypertension issues are associated with increased risk of COVID-19 infection and worse outcomes in lung injury and mortality. *See* Ernesto L Schiffrin, John M Flack, Sadayoshi Ito, Paul Muntner, & R Clinton Webb, *Hypertension and COVID-19*, American Journal of Hypertension, Volume 33, Issue 5, May 2020, at 373–374.[5] It has also been reported the diabetes places an individual both at higher risk for contracting the virus as well as developing severe complications from infection. Hussain, A., Bhowmik, B., & do Vale Moreira, N. C. (2020). *COVID-19 and diabetes: Knowledge in progress.* Diabetes Research and Clinical Practice, Vol 162, 108142, April 9, 2020, [published online ahead of print] https://doi.org/10.1016/j.diabres.2020.108142. Defendant testified at oral argument that he was unable to effectively control his diabetes at FCI Lompoc due to limited dietary options offered to him.

Health authorities have noted that a disproportionate burden of illness and death caused by this virus have occurred among racial and ethnic minority groups https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-

---

[4] Defendant notes that he requested copies of his BOP medical records on April 9, 2020. That request has not been met due to staffing shortages at FCI Lompoc.

[5] "The most common comorbidities in one report were hypertension (30%), diabetes (19%), and coronary heart disease (8%).") Another report showed that the most frequent comorbidities in patients with COVID-19 who developed the acute respiratory distress syndrome were hypertension (27%), diabetes (19%), and cardiovascular disease (6%)" *Id*.

Page 8 – ORDER AND OPINION

minorities.html. African Americans have been particularly affected by higher rates of infections and death resulting from infection. https://www.cnn.com/2020/05/08/us/coronavirus-pandemic-race-impact trnd/index.html. The Court finds that defendant's underlying health issues, particularly his diabetes from which he is not likely to recover, puts him at higher risk of complications should he contract the disease.

Of even greater concern to the Court at oral argument was the growing number of cases of FCI Lompoc. As of the hearing, the parties report that over 500 inmates there had contracted COVID-19. bop.gov/coronavirus Sadly just days later hundreds of new cases have been reported. https://www.latimes.com/california/story/2020-05-09/coronavirus-cases-lompoc-federal-prison-inmates. Currently, there are nearly 900 positive cases at the institution and two inmates have died as a result of infection. Indeed, the government has informed the Court that defendant has now tested positive for the virus.

Here, not only has defendant shown that he is particularly vulnerable to complications from COVID-19, he has also tested positive for the illness. The government argued that the risk of COVID-19 alone is not sufficient to present extraordinary and compelling reasons since all inmates, and indeed the public at large, faces the same threat. However, the Court finds that the threat is clearly more particularized in this defendant's case. While BOP has taken steps to abate the virus and provide treatment for cases, the Court finds that defendant has been unable to

Page 9 – ORDER AND OPINION

manage his underlying conditions, particularly his diabetes as well as he could in a non-custodial environment.[6]

The government has also pointed out that FCI Lompoc has built a Hospital Care Unit ("HCU") to help deal with the coronavirus outbreak. https://www.bop.gov/resources/news/pdfs/20200505_press_release_lox.pdf. While BOP is to be commended for quickly building and staffing this facility, the Court notes that the HCU only has 10 double occupancy acute care rooms. There are currently over 800 cases of COVID-19 at FCI Lompoc. If even 5% of those cases require acute care, this HCU would seemingly be well beyond its capacity.

The government concedes that "[i]f an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19 that condition may satisfy the standard of 'extraordinary and compelling reasons.'" Gov't Resp. to Def's Mot. for Release at 8. Further the Government "acknowledges that severe obesity and diabetes, when uncontrolled, can be a risk factor," but it argues that it is unclear that defendant, who suffers from those conditions, "is at such significant risk that he warrants compassionate release." *Id.* However, as noted above, the weight of the evidence before the Court indicates that defendant's underlying conditions are significant risk factors for severe infections and complications from infections. *See* Weiyi Tan & Jamil Aboulhosn, The Cardiovascular Burden of Coronavirus Disease 2019 (Covid-19) with a Focus on

---

[6] The government reports that BOP now is also providing universal testing at FCI Lompoc. The Court hopes it will do the same at all other BOP institutions.

Page 10 – ORDER AND OPINION

Congenital Heart Disease, 309 Int'l J. Cardiology 70-77 (Mar. 28, 2020). https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7102656/.

Considering the above information and circumstances of defendant's confinement, the Court concludes that defendant is suffering from a serious medical condition which significantly diminishes his ability to provide self-care in the environment where he is held. *See United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020). Defendant has shown that he is 1.) individually at high-risk for severe illness from COVID-19, 2.) being held at an institution where there is a current outbreak of COVID-19, and 3.) has contracted the virus. Thus, the Court finds that defendant has demonstrated an extraordinary and compelling reason for compassionate release.

The Court is also persuaded that the applicable § 3553(a) factors[7] support defendant's request for compassionate release and that defendant will not pose a threat to the community under § 3142(g).[8] The Court acknowledges the seriousness of defendant's offenses but also notes that defendant was on pretrial release for many

---

[7] In imposing a sentencing which is sufficient, but not greater than necessary the Court considers *inter* alia, the nature and circumstances of the offense, the history and characteristics of the defendant, community safety, the kinds of sentences available, the need to avoid unwanted disparities in sentencing, and all other obligations of sentencing including punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

[8] The Court notes that an alternative solution would be for defendant to be transferred to home confinement while recovering from the virus until the current crisis passes. He could recover and then return to custody to complete his current sentence. However, Congress has not given courts this tool, rather only BOP has discretion take such an action. *See* 18 U.S.C. § 3621(b); *see also United States v. Jones*, 2020 WL 1814616, at *1 (N.D. Cal. Apr. 10, 2020). However, BOP has failed to do so in this and many other cases.

Page 11 – ORDER AND OPINION

months after his arrest without incident and spent a period of time on release following sentencing also without incident. The Court also considers defendant's testimony at oral argument and the letters written on his behalf from friends and family members as significant in determining that a reduction in sentence is warranted.

As detailed above, the Court finds defendant's serious medical conditions, which now include testing positive for the virus, are also a significant factor which warrants a reduction of the sentence, and "[t]he benefits of keeping [defendant] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave." *United States v. Perez*, 2020 WL 1546422 at *4 (S.D.N.Y. Apr. 1, 2020).

At the original sentencing, defendant has a criminal history category of 1 and a total offense level of 23, which resulted in an advisory guideline range of 46 to 57 months. However, defendant was sentenced to a statutorily imposed minimum sentence of 60 months. While the amount of time served in this case is relatively short compared with the total sentence originally imposed, the Court finds that this amount of time, when considering the current characteristics of defendant, along with the condition of home confinement and community service to be ordered adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public under § 3553(a).[9] Further, defendant will still remain on supervision for four

---

[9] The length of sentence already served is not dispositve as to whether compassionate release should be granted, but rather it is factor which the Court must consider under 18 U.S.C. § 3553(a)

Page 12 – ORDER AND OPINION

years following release. If during that time he fails to comply with the conditions of that supervision, he will be at risk for a return to incarceration.

The Court next considers whether defendant presents a danger to the community. As defendant points out, Magistrate Judge John Acosta found that he was not a danger to the community pursuant to 18 U.S.C. § 3142(g) when he granted defendant pre-trial release. (doc. 6). This Court also implicitly made the same finding when defendant was allowed an extended period to self-surrender to BOP custody. (docs. 28, 33, 35).

The government argues that defendant has not made an adequate showing that he will not be a danger to the community, pointing out that it was only two years ago that he was selling controlled substances to undercover agents out of the home to which he would now be released. Given his long history of non-compliance with the law, and the fact that he has served less than 20% of his current sentence, the government argues that he remains a danger to the community.

Defendant's release plan was originally to live with his son and his son's family at a home defendant owns in Portland, Oregon.[10] However, given that he has now contracted COVID-19, he explains that he will self-quarantine in the house alone while his son's family will move to a separate residence. Defendant's ex-wife has represented that she will provide private transportation to bring him from California

---

[10] The U.S. Probation office has approved this plan should the Court ordered defendant released.

Page 13 – ORDER AND OPINION

to Oregon while following government advised protocols for transporting someone who has contracted the virus. *See* https://www.phila.gov/media/20200329105204/ Guide-for-transport-of-patients.pdf. Additionally, defendant has a strong support network of family and friends who have written that they will help by providing him with care and supplies as he recovers and transitions back into the community.

While defendant has had a history of noncompliance with the law in the past, he also has recent history of compliance while on pretrial supervision. Having heard from defendant at oral argument and considering the letters of support written on his behalf. The Court is satisfied that defendant is prepared to comply with the terms of release.

The Court finds that imposing an extended condition of home confinement and regular status conferences in this case will be sufficient to ensure that defendant does not reoffend. Thus, because of his serious medical conditions, the nature of his original offense, his record while on pretrial release, and in BOP custody, the Court again finds that defendant does not present a danger to the community under U.S.C. § 3142(g).

Accordingly, the Court shall order that defendant be placed on home confinement for the remainder of his original term of incarceration, which may run the entire term of his supervised release. The Court may consider amending that condition depending on defendant's performance on supervision. Defendant shall also be subject to a curfew at the discretion of his supervising probation officer. The Court also imposes 400 hours of community service to be completed at a rate of at

least 100 hours per year while defendant is on supervision.  Should the defendant fail to follow this or any other condition of release, the Court can fashion an appropriate sanction which could include further incarceration.  Should he be taken back into custody, defendant may not have any alternatives to being held in custody at BOP correctional institutions.

Finally, regarding defendant's release, the government has requested that the Court stay this order for 14 days during which time it can consider whether to appeal this decision and ensure that the defendant is not infectious.  The Court denies the government's request for a stay.  As defendant notes, other courts have allowed immediate release of infected and exposed inmates to be released.  *See US v. Fischman,* 2020 WL 2097615, at *3–4 (N.D. Cal. May 1, 2020)  Like the defendant's son in *Fischman*, defendant's ex-wife has represented that she will take necessary precautions in transporting him to his home in Portland where he will remain self-quarantined until he has been pronounced free of the virus by officials.  Should any local authorities need to be alerted about defendant's transportation, defense counsel is ordered to do so.

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court finds that extraordinary and compelling reasons warrant a reduction of defendant's sentence, that defendant does not pose a danger to any other person or the community, that the § 3553(a) factors support a reduction, and that the reduction is consistent with currently applicable U.S. Sentencing Commission policy statements.  The Court therefore GRANTS

Defendant's Amended Motion for Compassionate Release. (doc. 45) Defendant shall be released Wednesday, May 13, 2020, when he will be transported by family to his home in Portland.

An amended judgment shall be issued in this case. All previously imposed conditions remain in place, with the following additional conditions of release:

- Defendant shall be subject to a term of home confinement for the remainder of his original term of incarceration as determined by the BOP.

- Defendant shall be subject to a curfew at the discretion of his supervising probation officer.

- Defendant shall perform 400 hours of community service at rate of not less than 100 hours per year of his supervised release.

- Defendant shall self-quarantine until he no longer tests positive for COVID-19 and receives clearance from medical professionals.

- The U.S. Probation Office and the Federal Defender shall ensure that defendant is scheduled for a medical examination upon arriving in Portland. Defendant shall report any relevant medical findings to the Court.

- Defendant shall be subject to random telephone check-ins by the U.S. Probation Office. No GPS monitoring is ordered at this time.

- Defendant shall also abide by all stay at home orders issued by the State of Oregon.

- A further status conference shall be set approximately 30 days from the date of this order.

IT IS SO ORDERED.

Dated this <u>12th</u> day of May 2020.

/s/Ann Aiken
Ann Aiken
United States District Judge

Page 16 – ORDER AND OPINION